[No. 35055. Department One. January 7, 1960.]

*In the Matter of the Revocation of the License to Practice Dentistry of* EDWARD P. STOUTE.[1]

[1]Reported in 347 P. (2d) 1068.

*Brumbach & Hennessey* and *William F. Hennessey*, for appellant.

*The Attorney General* and *Herbert H. Fuller, Chief Assistant*, for respondent.

*Hall, Cole & Lawrence* and *William F. West, amici curiae.*

OTT, J.—On or about May 10, 1956, a complaint was filed with the director of licenses for the revocation of the license to practice dentistry of Dr. Edward P. Stoute. The complaint specified two charges as follows:

"(1) From on or about the 14th day of January, 1954, to the present, the said Dr. Edward P. Stoute was employed by and did aid, abet and assist, and did have a professional association and connection with one Mrs. Constance Conway in the operation of a dental office owned by the said Mrs. Constance Conway located at 516 Burwell street, in the city of Bremerton, Kitsap county, Washington, the said Mrs. Constance Conway not being licensed to practice dentistry in the state of Washington.

"(2) That the said Dr. Edward P. Stoute did aid and assist one Ray Lemon, a person not licensed to practice dentistry in the state of Washington, on or about December 6 and 7, 1955, to perform an operation on one L. C. Peterson."

A trial committee was appointed, and notice of the hearing given. At the hearing, the state was represented by an assistant attorney general. Dr. Stoute appeared in person and with counsel.

The trial committee found that both charges had been sustained by the evidence, and ordered Dr. Stoute's license to practice dentistry revoked. Dr. Stoute appealed to the superior court upon the record of the evidence before the committee, as provided by statute. The court affirmed the order of revocation, and this appeal followed.

Appellant concedes that "the jurisdiction and function of the Superior Court [and of this court] was [sic] limited to determining whether or not the action of the administrative agency was arbitrary, capricious, or contrary to law." *In re Harmon*, 52 Wn. (2d) 118, 323 P. (2d) 653 (1958); *Household Finance Corp. v. State*, 40 Wn. (2d) 451, 244 P. (2d) 260 (1952).

With reference to the first charge, appellant contends that the findings were contrary to law.

RCW 18.32.020 (prior to the 1957 amendment) provided: "A person practices dentistry, within the meaning of this chapter, . . . who owns, maintains or operates an office for the practice of dentistry, . . ."

RCW 18.32.230 provides in part as follows:

"The director may refuse to issue the license provided for in this chapter, and any license now in force . . . may be revoked or suspended, . . . when the licensee if [is] found guilty of any of the following acts or offenses: . . .

"(7) Professional connection or association with, or lending his name to another for the illegal practice of dentistry by another, or professional connection or association with any person, firm, or corporation holding himself, themselves, or itself out in any manner contrary to this chapter."

The charge was that Dr. Stoute "did have a professional association and connection with one Mrs. Constance Conway in the operation of a dental office owned by the said

Mrs. Constance Conway . . . the said Mrs. Constance Conway not being licensed to practice dentistry in the state of Washington." In order to sustain the charge, it was essential for the state to prove that Mrs. Constance Conway did own and operate the dental office. The name of the office was Dr. Clark Dental Clinic. Neither Mrs. Constance Conway nor Dr. Clark was called as a witness. Two of the state's own witnesses stated that they believed Dr. Clark owned and operated the clinic. The evidence established that, in the years 1954, 1955, and 1956, Mrs. Conway received substantial sums of money from the clinic. These payments to Mrs. Conway were authorized by Dr. Clark. The bookkeeper testified that she believed them to be made in accordance with a contract of sale of the dental office, which Dr. Clark was buying from Mrs. Conway.

To establish that Mrs. Conway owned the clinic, the state was permitted to introduce into evidence, over objection, a statement dated November 2, 1953 (exhibit No. 3), purportedly signed by Mrs. Conway, which read in part as follows:

"I, the undersigned, Constance Conway, do hereby certify that I am the sole owner of and the only one interested in the business conducted under the name of Dr. Clark Dental Clinic . . ."

The statement was identified by an officer of the clinic's depository bank as a part of its file relating to the clinic's account. The statement was inadmissible for two reasons: (1) Dr. Stoute commenced his association with the clinic January 14, 1954. The statement of ownership on November 3, 1953, was not relevant to establish ownership on January 14, 1954, in the absence of further evidence of continuous ownership. (2) The statement did not qualify under the business records exception to the hearsay rule because it was not made by an officer or employee of the bank and, therefore, was not a bank record.

The remaining evidence submitted to the committee, which was substantially as indicated above, failed to establish the elements of the first charge; hence, the committee's

findings and conclusions in this regard were contrary to law.

As to the second charge, RCW 18.32.230, *supra*, further provides that any license may be revoked or suspended when the licensee is found guilty of "(5) Employing, procuring, inducing, aiding or abetting a person not licensed or registered as a dentist to engage in the practice of dentistry . . . ."

The evidence disclosed, *inter alia*, that Ray Lemon was employed as a laboratory technician at the Dr. Clark Dental Clinic and was not licensed to practice dentistry.

There was a sharp conflict in the testimony offered by the state and that of Dr. Stoute. The state's witness, Nels C. Peterson, a patient of the clinic, testified that, on or about December 6, 1955, he called at the Dr. Clark Dental Clinic for dental service; that he was taken by the receptionist to a booth; that "Dr." Lemon extracted a tooth from his mouth; that he was assisted in the operation by Dr. Stoute; that he returned to the clinic about two days later and was again taken to the booth; that "Dr." Lemon administered the anesthetic; that "Dr." Lemon, acting alone, "had trouble pulling the tooth"; that Dr. Stoute came in, and that "one had hold of the tooth while the other cut it loose."

Dr. Stoute, on the other hand, testified that he performed all of the professional dental service for patient Peterson on both days, and that Mr. Lemon, known to him to be the clinic's laboratory technician, did nothing more to assist him than would normally have been done by a nurse.

The committee determined the facts to be as follows:

"That the said Dr. Edward P. Stoute did on or about the 6th day of December, 1955, aid and assist one Ray Lemon, a person not licensed to practice dentistry in the state of Washington, to extract a tooth for one L. C. Peterson, and again on or about the 8th day of December, 1955, did perform another operation, extracting a tooth of one L. C. Peterson, said Dr. Edward P. Stoute and the said Ray Lemon jointly working and assisting each other in the extraction of said tooth."

Appellant makes no contention as to the sufficiency of the evidence to support the committee's findings as to the second charge, but does contend that

"FINDING OF FACT NO. II, AS ENTERED BY THE DIRECTOR OF LICENSES ON THE 9TH DAY OF AUGUST, 1956, WAS MADE ONLY AFTER A DENIAL OF DUE PROCESS OF LAW UNDER THE CONSTITUTIONS BOTH OF THE UNITED STATES OF AMERICA AND OF THE STATE OF WASHINGTON IN THAT THE APPELLANT WAS:

"A. Effectively denied the right to cross-examine one of the principal witnesses against him and the signer of the complaint against him;

"B. That the complaint, as originally served and filed by the administrative agency, was defective as notice, in that it alleged one violation of the statute, and two were proved."

With reference to "A", appellant assigns error to the ruling of the chairman at the committee hearing that notes in a notebook which the witness Schultz used to refresh his memory as to the exact dates he talked with Dr. Stoute, prior to his preferring charges against him, were not to be marked for identification or given to appellant's counsel for the purpose of inspection. The testimony in this regard was as follows:

"Q. Did you have any later conversation with him? A. I had a contact with him on May 31, 1955. Q. You may relate that conversation, what you said to him and what he said to you. A. Pardon me, that contact was not with Dr. Stoute, it was with Dr. Clark but it relates to — Q. I don't want that. You had no further conversation with Dr. Stoute? A. Just a moment, I will refer to my notes. MR. HENNESSEY: I am sorry, Mr. Schultz, but I feel that I should say a word at this point. I am going to demand that these notes that Mr. Schultz has in his hand and obviously is using to refresh his recollection, be identified and that I be allowed to examine them. MR. FOX: Do you want them introduced into evidence, also? MR. HENNESSEY: I just want to see them, that is all. I don't want to introduce them. THE CHAIRMAN: Are you questioning the right of the inspector to make notes? MR. HENNESSEY: Certainly not. THE CHAIRMAN: To refresh his memory on dates? MR. HENNESSEY: Certainly not."

When the request to inspect and to have the notes marked for identification was denied, the witness, after refreshing his memory, testified that the date of his second conversation with Dr. Stoute was August 30, 1955.

Appellant's entire cross-examination of Mr. Schultz was as follows:

"Q. Now, Mr. Schultz, you have been with the department two and three-quarters years? A. Yes. Q. What did you do before that? A. I worked for the State Veterans Administration Council. Q. Are your duties confined to inspecting dental offices, or do you do other work? A. My work is exclusively dental work investigation. Q. Have you ever had any dental training yourself? A. No, sir. Q. You had talked to Dr. Stoute the first time, you testified, on January 15, 1954, is that correct? A. Yes. Q. Did you identify yourself as the license inspector? A. Yes. I think he knew me before, but I identified myself. Q. But you do carry identification? A. Yes, sir. Q. And you don't, as an ordinary practice, question people without identifying yourself? A. No, sir. MR. HENNESSEY: I have no further questions."

The appellant was in no way limited in his cross-examination of the witness. The witness was permitted to refresh his memory as to dates. Neither the dates nor the substance of the conversations was disputed.

■ We find no merit in appellant's assertion that, under the facts in this case, the trial committee abused its discretion in refusing to permit his counsel to inspect the notebook of the witness.

With reference to "B", appellant contends that the complaint was not definite, in that it stated that he "did aid and assist one Ray Lemon . . . on or about December 6 and 7, 1955, to perform an operation on one L. C. Peterson."

The evidence established that a tooth was extracted on each of the two occasions, and that Dr. Stoute assisted to some extent in the process of the extraction in both instances. Appellant's objection at the committee hearing was that he was misled and was not prepared to defend against *two* operations, and that, from the pleadings, he was prepared to defend against one operation which took place on either December 6th or 7th.

■ We find no merit in this assignment because (1) appellant did not ask for a continuance on the ground of surprise, nor did appellant establish that he was prejudiced by the alleged discrepancy in the complaint, and (2) the objection was waived when appellant testified he removed a tooth from the mouth of Peterson on each of the dates claimed; that Mr. Lemon assisted him no more than "any nurse would do", and that, therefore, Mr. Lemon was not at the time practicing dentistry.

We find no merit in either of appellant's assignments as to the second charge.

The committee predicated the revocation of Dr. Stoute's license upon its finding that both charges had been proved. The second charge only was established by the evidence. We are unable to determine what action would have been taken, had only the second charge been considered.

The judgment is reversed, with direction to the superior court to remand the cause to the director of licenses for the imposition of such penalty as the established infraction of the law merits. Neither party will recover costs.

WEAVER, C. J., MALLERY, DONWORTH, and HUNTER, JJ., concur.

---

February 25, 1960. Petition for rehearing denied.